UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                  No. 97-4716

ALBERT LAMAR WELLS, III,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, Chief District Judge.
(CR-93-353)

Submitted: November 3, 1998

Decided: January 4, 1999

Before ERVIN, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

David A. Bornhorst, North Charleston, South Carolina, for Appellant.
J. Rene Josey, United States Attorney, Mary Gordon Baker, Assistant
United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Albert Lamar Wells, III, appeals from his sentence for knowingly and intentionally possessing with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1994). Finding no error, we affirm.

Law enforcement officials began an investigation after receiving information that Wells was part of a group of individuals responsible for the sale and distribution of cocaine base in several counties of South Carolina. The Federal Bureau of Investigation utilized a confidential informant with prior knowledge of Wells's drug dealing to purchase cocaine base from Wells. Under the direction of law enforcement officials, the confidential informant made six undercover buys of cocaine base from Wells between April and May 1992.

Wells was indicted for conspiring to possess with the intent to distribute cocaine base and five substantive counts of possessing with the intent to distribute cocaine base. The conspiracy count named Wells, his co-defendant, and others known and unknown to the grand jury.

Wells pled guilty to one of the substantive counts of the indictment, which was based on one of the drug purchases by the confidential informant. The government debriefed Wells in November 1993 and again in March 1994, subjecting him to a polygraph examination in 1994. He failed two questions during the polygraph examination. Wells was sentenced in March 1994 to 120 months of incarceration after the district court determined that that was the statutory mandatory minimum sentence to which Wells was subject. See 21 U.S.C.A. § 841(b) (West Supp. 1998).

Wells subsequently filed an appeal with this court pursuant to Anders v. California, 386 U.S. 738 (1967), challenging the constitutionality of the statutory mandatory penalty scheme and this court affirmed the district court's judgment. Wells then filed a motion pursuant to 28 U.S.C.A. § 2255 (West 1994 & Supp. 1998), relating to a miscalculation of the drug amount for purposes of imposing the stat-

utory mandatory minimum sentence. In February 1997, the district court granted Wells's 2255 motion and ordered resentencing.[1]

The United States Probation Office submitted a revised presentence report in June 1997. Wells filed objections to the revised presentence report. One of Wells's objections was that he was qualified for a two-level reduction in his offense level under U.S. Sentencing Guidelines Manual §§ 2D1.1(b)(4), 5C1.2 (the "safety valve" provision) (Nov. 1995).[2] The Government filed an addendum to the presentence report addressing Wells's objections. The presentence report and the addendum stated that the presentence report was prepared based on the 1993 Guidelines Manual. In August 1997, Wells was resentenced to 97 months of incarceration followed by five years of supervised release.

On appeal, Wells claims that at his resentencing the district court should have considered a presentence report that was based on the 1995 Guidelines Manual. Wells also claims that the district court erred in denying him a two-level reduction in his offense level pursuant to U.S.S.G. §§ 2D1.1(b)(4), 5C1.2 (the"safety valve" provision), amendments that are contained in the 1995 Guidelines Manual.

As Wells notes, a sentencing court is required to use the Guidelines Manual in effect on the date that a defendant is sentenced. See United States v. Capers, 61 F.3d 1100, 1109 (4th Cir. 1995); 18 U.S.C. § 3553(a)(4) (1994); U.S.S.G. § 1B1.11(a). The Government admits that Wells's revised presentence report utilized the 1993 rather than the 1995 Guidelines Manual. Wells complains that he did not have the

_____

[1] At the first sentencing hearing, all relevant conduct was erroneously considered for purposes of applying the mandatory minimum sentence rather than just the amount of drugs involved in the count of conviction. See United States v. Estrada, 42 F.3d 228, 231-33 (4th Cir. 1994).
[2] We note that because the mandatory minimum for Wells's conviction, five years pursuant to § 841(b)(1)(B) (West 1994), was less than Wells's guideline range (using either an offense level of 29 or 27), he would not benefit from relief solely under U.S.S.G. § 5C1.2 (this section affords a defendant, who satisfies certain criteria, relief by sentencing him in accordance with his guidelines without regard to any statutory mandatory minimum sentence).

3

benefit of a presentence report which addressed the amendments in the 1995 Guidelines Manual. Specifically, he claims that the probation office's failure to use the 1995 Guidelines Manual in preparing his revised presentence report deprived him of a two-level reduction in his offense level pursuant to U.S.S.G. §§ 2D1.1(b)(4), 5C1.2. However, Wells's sentencing transcript reveals that, at his resentencing hearing, he claimed that he was qualified for a two-level reduction in his offense level pursuant to U.S.S.G. §§ 2D1.1(b)(4), 5C1.2. The sentencing court considered Wells's claim and determined that he was not eligible for relief under these sections. Because the district court analyzed Wells's entitlement to a reduction in his offense level afforded by the amendments contained in the 1995 Guidelines Manual, the district court did use the Guidelines Manual in effect on the date Wells was resentenced.

Wells next claims that the district court erred in finding that he was not entitled to a two-level reduction in his offense level pursuant to U.S.S.G. §§ 2D1.1(b)(4), 5C1.2. Subsection (b)(4) provides for a two-level reduction if the defendant meets the criteria set forth in the "safety valve" provision, see 18 U.S.C.A. § 3553(f)(1)-(5) (West Supp. 1998); U.S.S.G. §§ 2D1.1(b)(4), 5C1.2, and his offense level is 26 or more. Wells's offense level at his resentencing was 29. The fifth requirement of the "safety valve" provision is that, by the time of sentencing, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." § 3553(f)(5); U.S.S.G.§ 5C1.2(5). The district court found that Wells did not satisfy this requirement. Wells had the burden of proving that he qualified for application of the safety valve provision. See United States v. Beltran-Ortiz , 91 F.3d 665, 669 (4th Cir. 1996). The district court's determination of whether Wells satisfied the requirements of § 3553(f)(1)-(5) is a question of fact reviewed for clear error. See United States v. Romo, 81 F.3d 84, 86 (8th Cir. 1996); United States v. Rodriguez, 69 F.3d 136, 144 (7th Cir. 1995).

Wells pled guilty to the distribution of cocaine base on one particular occasion, but the indictment charged him with other sales of cocaine base. During the six controlled purchases, Wells made many comments indicating that his drug business involved other individu-

4

als. The Government debriefed Wells in November 1993 and March 1994. Wells did not provide any last names of the persons from whom he had bought cocaine base or to whom he had sold cocaine base, other than his codefendant. Furthermore, Wells failed a polygraph examination administered to him in March 1994. Because the Government was attempting to investigate a larger group, including Wells's sources and clients, Wells was administered the following two questions during his polygraph examination:"Did you every buy or sell illegal drugs for Herman Pugh?" and "Did you ever travel outside of South Carolina to buy or sell illegal drugs?" Wells answered "no" to both these questions. The polygrapher concluded that Wells was deceptive in answering these two questions.

Wells contends that these questions were outside the scope of § 5C1.2(5) because they did not address the offense or offenses charged in his indictment. He alleges that the district court's application of § 5C1.2(5) "included any possible drug activity no matter how far removed or apart from the offenses charged." We disagree. "`Offense' means the offense of conviction and relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G.§ 1B1.1, comment. (n.1(l)). Offenses are part of a common scheme or plan when they are substantially connected to each other by at least one common factor such as common victims, common accomplices, common purpose or similar modus operandi. See U.S.S.G. § 1B1.3, comment. (n.9(a)). Moreover, offenses that do not qualify as part of a common scheme or plan may qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. See U.S.S.G. § 1B1.3, comment. (n.9(B)). Factors appropriate to this determination include the degree of similarity of the offenses, the regularity of repetitions of the offenses and the time interval between the offenses. See id.

The questions administered during the polygraph examination related directly to the buying and selling of drugs and the determination of Well's sources, clients, and mode of operation, whether or not the drugs came from outside of South Carolina. We find that the two questions which provided the basis for Wells's deception were within the scope of his relevant conduct. Although the questions related to

5

conduct that was not specifically charged in Well's indictment, uncharged conduct can constitute the same course of conduct and a common scheme or plan. See U.S.S.G. § 1B1.3. Thus, the district court did not clearly err in finding that Wells did not satisfy U.S.S.G. § 5C1.2(5).

Accordingly, we affirm Wells's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6