# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3102

_____

United States of America,

        Appellee,

    v.

Jose Ramirez Garcia,

        Appellant.

_____

No. 05-3755

_____

United States of America,

        Appellee,

    v.

Patricio Gonzalez, also known as
German Ruiz,

        Appellant.

*
*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the Southern
District of Iowa.

_____

Submitted: March 14, 2006
Filed: March 22, 2006

_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.

FAGG, Circuit Judge.

Police seized evidence from Jose Ramirez Garcia and Patricio Gonzalez during separate warrantless searches. After their motions to suppress were denied, juries convicted both men of conspiracy to distribute methamphetamine, distribution of methamphetamine, and possession with intent to distribute methamphetamine. Garcia was sentenced to 180 months in prison, and Gonzalez was sentenced to 240 months in prison (the mandatory minimum under 18 U.S.C. § 841(b)(1)(A)). In this consolidated appeal, Garcia and Gonzalez challenge the denials of their motions to suppress.

Garcia contends the district court[*] should have granted his motion to suppress evidence seized during a search of his vehicle. During the hearing on Garcia's motion, an officer with fifteen years of experience in narcotics testified that he was conducting surveillance on a building based on earlier drug transactions there. The officer saw Garcia standing by a blue Dodge pickup truck in the parking lot. The officer noticed Garcia seemed to be looking around to see if anyone was watching him, and saw an unusually large bulge in the front pocket of Garcia's pants. After Garcia knocked on doors to an apartment in the building several times and received no response, Garcia removed the large object from his pocket, placed it in a green box, and put the green box in the back of his pickup. With the officer following, Garcia and his passenger then left the area, entered and the freeway, and pulled into a church parking lot. When Garcia got out of the truck, the officer approached, identified himself as a police officer, and showed Garcia his badge. The officer asked Garcia for his driver's license, but Garcia could not produce one. The officer saw Garcia looked pale and appeared very nervous. The officer asked Garcia for consent to

---

[*]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

search the truck, and Garcia consented.  The officer then went immediately to the green box in the back of the pickup and found a large bag of methamphetamine.  Garcia was arrested, and a further search of the vehicle resulted in the seizure of more methamphetamine, for a total of nearly one pound.

Garcia contends there was an investigatory stop in the church parking lot and the stop violated the Fourth Amendment because the officer lacked a reasonable suspicion of criminal activity.  We conclude no Fourth Amendment violation occurred.  Police do not violate the Fourth Amendment merely by approaching individuals in public places and asking questions, requesting identification, and requesting consent to search, as long as the police do not coerce cooperation.  United States v. Drayton, 536 U.S. 194, 200-01 (2002).  Here, the district court stated that Garcia's vehicle was never stopped by police, and with no earlier contact or directive from law enforcement, Garcia parked and exited his vehicle in the church parking lot.  Only then did the officer approach Garcia and begin to question him about identification, and Garcia could not produce a license.  The officer requested consent to search, and Garcia does not contest the validity of his consent.

Even if there was an investigatory stop in this case, the stop was justified because the officer had a reasonable suspicion that Garcia was involved in criminal activity.  United States v. Spotts, 275 F.3d 714, 718-20 (8th Cir. 2002).  The officer had seen Garcia at a known drug house, acting in a furtive manner, trying to make contact with residents while concealing an object in his pants, then removing the object and placing it in the back of his truck after he failed to make contact.  Given the officer's specialized training in narcotics enforcement, the officer could reasonably believe criminal activity was afoot.

Gonzalez also asserts the district court[**] should have granted his motion to suppress. At the suppression hearing, a police officer testified that after he stopped a vehicle being driven by Gonzalez for a traffic violation, Gonzalez handed him an Iowa identification card and told him his driver's license might be suspended due to a drug-related conviction. From a computer check on Gonzalez, his passenger, and the vehicle, the officer learned there were no arrest warrants for Gonzalez or his passenger, but neither had a driver's license and the vehicle was registered to a third person. At the officer's request, Gonzalez exited the vehicle. The officer then performed a pat down search for his safety, and felt an object in Gonzalez's left rear pocket. The officer asked Gonzalez what the object was, and Gonzalez responded it was a glass pipe. The officer removed the pipe and saw it had been used and contained a white residue. The officer then arrested Gonzalez for not having a driver's license and possessing drug paraphernalia. The officer then searched the vehicle incident to Gonzalez's arrest. Inside the center console, the officer located a cigarette box wrapped in foil containing marijuana and methamphetamine. During the search, the officer also found several butane torches, a torch head, baggies, $540 in cash, drug notes, and digital scales with white residue.

Gonzalez attacks the pat down asserting it violated his Fourth Amendment rights because the officer did not have reasonable suspicion that Gonzalez posed a danger. When a police officer reasonably believes a person may be armed and dangerous, the officer may frisk the person for weapons. United States v. Cornelius, 391 F.3d 965, 967 (8th Cir. 2004). A pat-down search or protective frisk is justified by officer safety. Id. at 967-68. Gonzalez contends that the officer's knowledge that his license had been suspended for an earlier drug conviction did not give rise to a reasonable belief that he posed a danger. Given the officer's knowledge that Gonzalez had an earlier drug conviction, was driving a car neither he nor his passenger owned,

---

[**]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

and was driving without a license, we conclude the officer could reasonably conclude in light of his experience that criminal activity might be afoot and Gonzalez might be armed and dangerous. See id.; United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005) (reasonable for officer to believe person suspected of drug activity might be armed and dangerous); United States v. Shranklen, 315 F.3d 959, 963 (8th Cir. 2003) (reasonable for officer to believe driver was armed and dangerous when neither driver nor passenger owned vehicle or had valid license). Once Gonzalez was arrested, the search of his vehicle was permissible incident to his arrest. United States v. Barnes, 374 F.3d 601, 603 (8th Cir. 2004).

Gonzalez next contends his Fifth and Sixth Amendment rights were violated when the court, rather than the jury, found the fact of his earlier conviction for the purpose of 18 U.S.C. § 841(b)(1)(A). Gonzalez acknowledges this contention is contrary to controlling law, Almendarez-Torres v. United States, 523 U.S. 224 (1998); United States v. Carrillo-Beltran, 424 F.3d 845, 848 (8th Cir. 2005) (post-Booker), and seeks only to preserve error in the event the Supreme Court revisits the issue. See Shepard v. United States, 544 U.S. 13, __, 125 S. Ct. 1254, 1264 (2005) (Thomas, J., concurring in part) (stating a majority of the Court recognizes Almendarez-Torres was wrongly decided, but has yet to reconsider the issue).

Citing United States v. Okai, No. 4:05CR19, 2005 WL 2042301, at *7-10 (D. Neb. Aug. 22, 2005) (unpublished), Gonzalez last argues the Fifth Amendment Due Process Clause requires his drug quantity to be proven to the court beyond a reasonable doubt. Gonzalez acknowledges precedents hold that only a preponderance of evidence is required, but argues the precedents do not control because they are based on the Sixth Amendment. We need not decide whether the Fifth Amendment requires a higher burden of proof at sentencing because, as Gonzalez recognizes, the issue is moot in light of the district court's finding that the mandatory minimum controlled in this case.

Accordingly, we affirm.

_____